CASE 129—EQUITY—OCTOBER 7.

# Mayo's adm'r v. Snead, &c.
# Snead v. Snead, &c.

### APPEAL FROM LOUISVILLE CHANCERY COURT.

1. S. & S. being insolvent, made an assignment for the benefit of their creditors, conveying "all that they have in satisfaction of their debts, and all debts due" to them. *Held*—That the assignment included a demand then pending by suit in the Jefferson common pleas court. against certain railroad companies, for damages to their foundry, and to an incorporeal hereditament appurtenant to it.

2. Having the right to redeem the assigned estate, or to select one who might redeem, they selected appellant, who paid the amount agreed upon for redemption. He is entitled to recover the amount paid by the railroad companies to the assignee as a part of the estate assigned.

3. Every conveyance is to be construed by a consideration of the entire. instrument, so as to arrive at the intention of the parties.

BARR, GOODLOE & HUMPHREY FOR APPELLANT.

1. The case of J.. M. & I. R. R. Co. v. Esterle (13 Bush, 671) explains the · nature and extent of appellant's claim.

2. The appellees intended to make a clean sweep of everything that be-
longed to them for the benefit of their creditors, and the presumption is irresistible, in the light of the circumstances surrounding them, that all they had was transferred by the deed of assignment. (1 Peters, 193; 3 Leigh, 714; 7 Grattan, 512.)

HAGAN & CARUTH FOR APPELLEE SAYRE.

1. An assignment passes only the property designated in terms by it.. (Burrell on Assignments, 354–7.)

2. Where, in an assignment, there is both a general and a special clause; the general clause is limited by the special clause, and the assignment · only carries the property mentioned in the special clause. (Burrell on Assignments, 266–7–8; 5 Johnson, 344; 4 Wheat., 117; 21 Pick., 503; Scott v. Coleman, 5 Litt., 349.)

3. The assignment of "debts" would not carry a claim for damages for a. tort.

BULLOCK & ANDERSON FOR APPELLANT.

The claim of Snead & Sayre against the Louisville Bridge Company and· others, for damages to their foundry, passed by their assignment for· the benefit of their creditors, and having passed by the assignment,.

appellant, who was selected by the assignors to redeem the assigned property, is entitled to the sum paid by the corporations in satisfaction of the damages to their foundry (Byall v. Rowles, Leading Cases, Equity, 2; White & Tudor's Notes, 1624–5; Burrell on Assignments, 2d ed., 70, 73; 1 Peters, 218; 7 Grattan, 511; 3 Leigh, 714), for which an action was then pending.   (3 Bl. Comm., 155; Smith's Mer. Law, chap. 13, sec. 1; 13 W. M., 579; 18 Penn., 249; 18 Conn., 522; 2 Waterman on Trespass, 535; 1 W. & S., 346; 2 Watts, 343.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

The facts of this record conduce to show that Snead & Sayre, in the year 1877, were the owners of a foundry in the city of Louisville, and becoming embarrassed—in fact, hopelessly insolvent—made a compromise with their creditors, by which they transferred or assigned to a trustee, for their benefit, all their firm property, and, so far as appears from this record, all the property owned by them.   Their indebtedness was about fifteen thousand dollars, and the supposed value of the assets transferred to creditors about five thousand dollars.   At the time of the assignment the partners, Snead & Sayre, had an action pending in the Louisville common pleas court against some railroad companies for damages to their foundry, and to an incorporeal hereditament appurtenant thereto, by reason of the location of the track of the companies' road so near the building as to lessen its value.   That action was instituted in the year 1875, and after the assignment to creditors was compromised, the attorneys receiving sixteen hundred dollars for Snead & Sayre or the parties entitled.   The deed of assignment gave to Snead the right to redeem the property transferred to creditors, within a limited period, by paying five thousand dollars, or if he (Snead) could not redeem, he had the option to permit another to redeem, whether for him or to hold as his own does not appear, nor is it material to the settlement of the questions made.   Snead failed to pay the

five thousand dollars, but named one Mayo as a party who would redeem, and Mayo paid the money, and became entitled to hold all the property passed by the assignment to Snead & Sayre's creditors. The attorney for Snead & Sayre having collected the money, and finding that the two partners, as well as Mayo, claimed it, required them to interplead, in order that their several claims could be determined. The chancellor decided that Snead & Sayre were entitled to the fund, and of that judgment Mayo complains, and the only question to be considered is, did the assignment to creditors embrace the claim asserted in the action against the railroad company for damages?

That such a claim could be assigned we think admits of but little doubt, as, in the event of the death of the original plaintiffs, the right of action would have survived to their personal representatives. (See General Statutes, page 179, section 1 of chapter 10.) So the only question presented is, is this claim embraced by the assignment?

It is manifest that the grantors intended to pass all the estate, real and personal, owned by them jointly, for the benefit of their creditors, and the presumption necessarily arises that they owned no other estate of any value, as the creditors, if there had been other estate, would scarcely have consented to discharge them from liabilities amounting to fifteen thousand dollars on the payment of five thousand. The assignment reads ''that the party of the first part (the debtors) being unable to pay in full, the indebtedness due from them to the parties of the second part (the creditors), *and willing to surrender all that they have in satisfaction of their debts*, and for a full release therefrom, do hereby sell, release, transfer, and deliver all the buildings, machinery, tools, implements, &c., manufactured and unmanufactured

stock now owned by them and heretofore used by them in carrying on the foundry business on Fourteenth street in Louisville, *and all debts* due to the said first party, also including one mule and wagons, and everything in and upon the foundry property belonging to the first party, at the nominal cost value of about $——; and also the policy of insurance on the life of Samuel Snead, to be transferred," &c.

That they intended surrendering all their estate cannot be doubted; but it is urged that this intention, made in express words, was limited or qualified by the parties when they undertook to designate the property transferred. That an assignment only passes the property designated, and that a special clause may limit and control the general clause, is well settled, and while recognizing this rule, we are satisfied the mere fact that the implements, stock on hand, mules, &c., are mentioned in the assignment does not negative the idea that the whole of the estate belonging to their assignors was transferred by them to their creditors.

The specific and minute description of the property was given to indicate the purpose on the part of the appellees to pass their entire estate to their creditors in order to obtain a complete discharge from their liabilities. They not only designate certain property, the title to which is passed to the creditors, but all *debts* due the firm; and while the word *debts*, in a technical sense, means "sums of money due by a certain or express agreement," it is regarded in this case as having a more enlarged meaning, and when considered in connection with the declaration made by the grantors in the deed of assignment, that "*they were willing to surrender all they had*" in order to be released from the payment of their debts, and were released from an indebtedness of $15,000 by the payment of five thousand, it would be a

harsh rule of construction that would take from the creditors this sixteen hundred dollars, by attaching a technical meaning to words that must necessarily defeat the plain intention of the parties.

The fact that a grantor intended to convey or transfer his property is not sufficient to authorize the conclusion that he did convey; but such an intention can be certainly looked to for the purpose of determining the meaning of the grantor in the use of language contained in the granting clause. This entire writing should be construed as equivalent to a transfer of the joint estate of the appellees to the payment ·of their debts; and when looking to the object in view and the end accomplished by the appellees, it will not do to say that the appellees are discharged from all their indebtedness, and the creditors only get a part of the property held by them as joint owners or partners. Such a construction does violence to the plain intention of the parties, and defeats the very object they had in view when the release was made. Under the words in a deed, of "all the debts due the grantor," a claim the grantor had on a foreign government for the detention of his ship was held to pass. (Griffin v. McCauly's adm'r, 7 Grattan.)

Cases may be found in the construction of contracts or assignments where the word debt is held not to embrace a claim for damages, but every conveyance or transfer is to be construed by considering the entire instrument, and the intention of the parties carried out, when not doing violence to the language used. The intention to pass all the joint estate owned by these parties is manifest, and we find no language used limiting or qualifying this purpose on the part of the appellees; and while neither party may have thought of the action then pending against the railroad company, it

is evident from the whole instrument that they were transferring all they had, and the chancellor ought not to hesitate in placing the same construction on the writing that all the parties must have given it at the date of its execution.

Judgment reversed, and cause remanded, with directions to dismiss the claim of the appellees. There are two appeals on the record. The judgment for costs should go as if there was one appeal only.